IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FUEL CLOTHING COMPANY, INC.,          )
                                      )
          Plaintiff,                  )  Case No. CV05-1220-HU
                                      )
     vs.                              )     OPINION AND
                                      )     ORDER
SAFARI SHIRT COMPANY d/b/a FUEL       )
CLOTHING COMPANY, INC.,               )
                                      )
          Defendant.                  )
_____)
                                      )
SAFARI SHIRT COMPANY d/b/a/ FUEL      )
CLOTHING COMPANY, INC.,               )
                                      )
          Counter-Plaintiff,          )
                                      )
     vs.                              )
                                      )
FUEL CLOTHING COMPANY, INC.           )
                                      )
          Counter-Defendant.          )
_____)

///


1   - OPINION AND ORDER

Michael A. Cohen
Patchen M. Haggerty
Schwabe, Williamson & Wyatt
1211 S.W. Fifth Avenue, Suites 1600-1900
Portland, Oregon 97204

John E. Schmidt, III
Melissa J. Copeland
Nelson Mullins Riley & Scarborough
1320 Main Street, 17th Floor
Columbia, South Carolina 29201
        Attorneys for plaintiff

David Hytowitz
Robert S. Dorband
Law Offices, Robert S. Dorband
4101 Kruse Way, Suite 201
Lake Oswego, Oregon 97035
        Attorneys for defendant

HUBEL, Magistrate Judge:

        Plaintiff Fuel Clothing Co., Inc. (Fuel) brought this
action against Safari Shirt Company (Safari) asserting five
claims for relief: trademark infringement under the Lanham Act,
15 U.S.C. § 1051; common law trademark and unfair competition;
federal unfair competition and false designation of origin under
15 U.S.C. § 1125; trademark dilution under 15 U.S.C. § 1125; and
declaratory relief. Defendant has counterclaimed for violation of
the Oregon Anti-Dilution Statute, Or. Rev. Stat. § 647.107, and
for common law intentional interference with business relations.

        Fuel has filed a motion for summary judgment in its favor
on all of its claims except the fourth, for trademark dilution,
and on both of Safari's counterclaims. Safari has filed a motion
for summary judgment in its favor on all five of Fuel's claims

2   - OPINION AND ORDER

and its own counterclaims.

At oral argument, Safari conceded Fuel's motion against its counterclaim for intentional interference with business relations.

### Factual Background

Fuel was started by Shane Gould in 1992, and Gould remains the only shareholder. Fuel currently operates out of an establishment in  Hilton Head, South Carolina, run by Gould. Fuel sells its own branded apparel and accessories, primarily through its website, but also through representatives who direct consumers to the website, and through distributors.

Since 1999, Fuel has been the registered owner of a trademark consisting of the word "Fuel" for use with various items of clothing and accessories. Over the past 10 years, Fuel has used the "Fuel" mark in many different typefaces and colors, and in conjunction with a variety of graphics and logos, among them several different flame designs.

Fuel's target market for its merchandise is 13-25 year old action sports enthusiasts. The term "action sports" includes snowboarding, skateboarding, motocross and surfing, and can also include paintball, skydiving, snowmobile racing, and mountain bike riding.

Sales to customers in Washington and Oregon constitute a very small part of Fuel Clothing's total invoices; less than 1%

of Fuel's total sales have resulted in shipments to either Oregon or Washington.

Safari is owned by John and Janelle Tessier, and has its headquarters in Salem, Oregon. Safari currently operates six retail stores, under the name "Fuel: Surf Skate Moto." It formerly operated its stores under the name "Fuel." Safari sells major brand name casual apparel and accessories, including Volcom, Roxy, Element, DC Shoes, Fox Racing, DVS, Quicksilver, Billabong, Hurley, and Independent. Safari does not manufacture or sell any apparel or accessories branded with the word "Fuel," although in the past, Safari has sold items labeled with the word "Fuel" and has used the word "Fuel" in its advertising. Safari also markets to 12-20 year old action sports enthusiasts. Safari has also used a flame-shaped logo in association with its stores.

All of Safari's sales occur in its six retail stores, located in shopping malls in small to mid-sized markets: Albany, Oregon; Salem, Oregon; Springfield, Oregon; North Bend, Oregon; Aberdeen, Washington; and Kelso, Washington. Safari does not currently operate a website, does not sell over the Internet, does not manufacture apparel or accessories, and advertises only in local market area newspapers, flyers, and school events.

In September 2003, Fuel sent Safari a Cease and Desist letter. In response to the letter, Safari changed the name of its stores from "Fuel" to "Fuel: Surf Skate Moto." Fuel asserts, on

4   - OPINION AND ORDER

the basis of photographs taken by Julie Scholer, that Safari continues to display signage on its stores showing the word "Fuel" standing alone. See Declaration of Julie Scholer and Exhibit A thereto. However, the copies of the photographs submitted by Fuel are of such poor quality that it is impossible to ascertain whether this is the case.[1]

In June 2006, Safari commissioned a survey of 600 respondents in Lloyd Center Mall in Portland, Oregon and Lancaster Mall in Salem, Oregon, to determine the existence of confusion about the origin of goods sold by Safari and Fuel. The respondents for the survey were aged 13-25 who had access to the Internet and who occasionally browsed or shopped on the Internet. The survey indicated that none of the respondents in Portland or Salem mentioned or recognized Fuel Clothing Company.

## Standards

A trademark is "any word, name, symbol, or device or any combination thereof" used by a person"to identify and distinguish

---

[1] The Declaration of Julie Scholer states that she took photographs at the Kelso, Washington and Salem, Oregon stores. The body of the Declaration does not state what she photographed at each store. That information is contained in the report attached as Exhibit A. There is no statement in the Declaration about the truth or accuracy of the written statements in the report, which Safari has moved to strike. Even if the language of the report is considered as part of the record on summary judgment, it is still unclear exactly what the photographs do and do not show with respect to the name on the outside of the stores, due to the quality of the photographs.

his or her goods ... from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. The purpose of a trademark is to allow customers to identify the manufacturer or sponsor of a good or the provider of a service. New Kids on the Block v. News. Am. Pub., Inc., 971 F.2d 302, 305 (9th Cir. 1992); Kassbaum v. Steppenwolf Productions, Inc., 236 F.3d 487, 492 (9th Cir. 2000). Federal trademark law seeks to protect consumers who have formed particular associations with a mark and to protect the investment in a mark made by the owner. Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 873 (9th Cir. 1999), citing Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 163-64 (1995). Trademark law also aims to protect trademark owners from a false perception that they are associated with or endorse a product. Cairns v. Franklin Mint Co., 292 F.3d 1139, 1149-50 (9th Cir. 2002).

To resolve whether the defendant's conduct constitutes trademark infringement or unfair competition, the court must first determine whether the plaintiff has a valid, protectable trademark interest. Brookfield Communications v. West Coast, 174 F.3d 1036, 1047 (9th Cir. 1999). Registration of the mark constitutes prima facie evidence of the validity of the registered mark and of the exclusive right to use the mark on the goods and services specified in the registration. Id.; 15 U.S.C. § 1057(b); 1115(a).

6    - OPINION AND ORDER

To prevail on a Lanham Act trademark infringement claim, the plaintiff must establish that the defendant is using a mark confusingly similar to its own, earlier used mark. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).

A "false designation" claim under § 43 of the Lanham Act, which applies to both registered and unregistered marks, is based on the following statutory provision:

> Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>      (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ...
>      shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)91). To state an infringement claim under § 43(a) the plaintiff must show 1) distinctiveness; 2) nonfunctionality; and 3) likelihood of confusion. Kendall-Jackson Winery v. E & J Gallo Winery, 150 F.3d 1042 (9th Cir. 1998).

Likelihood of confusion is a question of fact. Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1264 (9th Cir. 2001). Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it

7   - OPINION AND ORDER

represents is associated with the source of a different product or service identified by a similar mark." Id. at 1265. A finding of likelihood of confusion requires that confusion be probable, not just a possibility. Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987). Thus, summary judgment is inappropriate when a jury could reasonably conclude that there is or is not a likelihood of confusion. Downing v. Abercrombie & Fitch, 265 F.3d 994, 1008 (9th Cir. 2001). Due to the factual nature of likelihood of confusion, determining whether a likelihood of confusion exists at the summary judgment stage is generally disfavored because a full record is usually required to fully assess the facts. Clicks Billiards, 251 F.3d at 1265. Nevertheless, likelihood of confusion may be decided through summary judgment in the absence of a material and reasonable factual dispute. Surfvivor Media Inc. v. Survivor Productions, 406 F.3d 625 (9th Cir. 2005)(affirming summary judgment on issue of likelihood of confusion).

The court must review the evidence to determine whether it presents a disputed issue of material fact, even when the parties have filed cross motions for summary judgment. Fair Housing Council of Riverside v. Riverside Two, 249 F.3d 1132, 1135-36 (9th Cir. 2001).

### Discussion

The parties agreed at oral argument that summary judgment

8   - OPINION AND ORDER

in favor of either side would not lie unless the evidence was such that no reasonable jury could return a verdict for the other side. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence before the court falls well short of this standard, and genuine issues of material fact preclude summary judgment for either side on most of the claims.

The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products. Interstellar Starship Services, Ltd. v. Epix, Inc., 304 F.3d 936, 941 (9th Cir. 2002). Evidence of actual confusion is persuasive proof that future confusion is likely. Thane Intern., Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002). Fuel's evidence on actual confusion is inadmissible.

The court looks to the following factors, the so-called Sleekcraft factors,[2] for guidance in determining the likelihood of confusion: 1) similarity of the marks; 2) relatedness or proximity of the two companies' products or services; 3) strength of the plaintiff's mark; 4) marketing channels used; 5) degree of care likely to be exercised by purchasers in selecting goods; 6) defendant's intent in selecting its mark; 7) evidence of actual confusion; and 9) likelihood of expansion into other markets or

_____

[2] From AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979).

9   - OPINION AND ORDER

product lines. See GoTo.com at 1205; Brookfield Communications, 174 F.3d at 1053-54. This eight-factor test is "pliant." Id. at 1054. Some factors are much more important than others, and the relative importance of each individual factor will be case specific. Id. Although some factors, such as similarity of the marks and whether the two companies are direct competitors, will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion only after considering a subset of factors. Id., citing Dreamwerks Prod. Group v. SKG Studio, 142 F.3d 1127, 1130-32 (9th Cir. 1998). The list is not exhaustive, and non-listed variables "may often be quite important." Id.

The evidence before the court in this case on likelihood of confusion is replete with factual disputes which make it impossible to apply the Sleekcraft factors and conclude as a matter of law that a reasonable jury could reach only one decision. This is particularly true with respect to such important factors as the similarity of the marks, the strength of the plaintiff's mark, the marketing channels used, the degree of care likely to be exercised by purchasers, defendant's intent in selecting its mark, and likelihood of either party's expansion into other markets or product lines. To apply the Sleekcraft factors a factfinder must first evaluate each factor and determine in whose favor it weighs heaviest. At the end, the

factfinder must sum up this factor-by-factor evaluation and come to a conclusion about in whose favor, on balance, all of the factors weigh. I conclude that neither Fuel, nor Safari is entitled to summary judgment on Fuel's claims for trademark infringement, unfair competition, and false designation of origin.

Safari has moved against Fuel's fourth claim for relief, for federal trademark dilution under 15 U.S.C. § 1125. That statute provides:

> The owner of a famous mark shall be entitled ... to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark...

Injunctive relief under this statute is available if a plaintiff can establish that 1) its mark is famous; 2) the defendant is making commercial use of the mark; 3) the defendant's use began after the plaintiff's mark became famous; and 4) the defendant's use dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. 15 U.S.C. § 1125(c); Panavision Int'l LP v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998).

The statute provides eight factors courts may use, along with other relevant factors, in determining whether a mark is distinctive and famous. The eight factors are the degree of inherent or acquired distinctiveness of the mark; the duration

11  - OPINION AND ORDER

and extent of use of the mark in connection with the goods or
services with which the mark is used; the duration and extent of
advertising and publicity of the mark; the geographical extent of
the trading area in which the mark is used; the channels of trade
for the goods or services with which the mark is used; the degree
of recognition of the mark in the trading areas and channels of
trade used by the mark's owner and the person against whom the
injunction is sought; the nature and extent of use of the same or
similar marks by third parties; and whether the mark is
registered.

Famousness in the dilution context is interpreted very
narrowly. Thane Int'l, at 305 F.3d 907, citing Avery Dennison
Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999)("Dilution is
a cause of action invented and reserved for a select class of
marks--those marks with such powerful consumer associations that
even non-competing uses can impinge their value.") Accordingly,
to meet the famousness element of protection under the dilution
statutes a mark must be "truly prominent and renowned." Avery
Dennison, 189 F.3d at 189, quoted in Thane Int'l, 305 F.3d at
907-08.

Furthermore, to withstand summary judgment on a dilution
claim, the plaintiff must show actual dilution, rather than a
likelihood of dilution. Moseley v. V. Secret Catalogue, Inc., 537
U.S. 418 (2003).

12  - OPINION AND ORDER

Safari contends that it is entitled to summary judgment on this claim because Fuel has failed to establish either that its mark is famous or that actual dilution of its mark has occurred. of these elements. Fuel has not responded to these arguments. Safari is entitled to summary judgment in its favor on this claim.

Both sides move for summary judgment on Safari's counterclaim under the Oregon Anti-Dilution statute, Or. Rev. Stat. § 647.107. This claim relates to the use by both sides of flame logos. To prevail on a trademark dilution claim under Oregon law, Safari must prove that 1) it owns a "distinctive" mark; and 2) Fuel's use of the mark creates a likelihood that Safari's mark will be diluted.

Fuel Clothing argues that summary judgment in its favor is appropriate because it began using the flame logo in 1997. This argument is unpersuasive because the evidence shows that the flame logos used by Fuel have taken a multitude of forms over the years, some completely different from the flame logo used by Safari, some quite similar. The evidence is disputed on which party was the first to use the teardrop-shaped flame logo that is at issue here, and there is also a factual dispute about whether either party designed its flame logo with the other party's logo in mind.

///

13  - OPINION AND ORDER

Fuel argues that Safari has not produced any evidence tending to show actual confusion or a likelihood of confusion between its flame logo and Fuel Clothing's flame logo. However, actual or potential confusion is not an element of a claim under the Oregon Anti-Dilution statute, which expressly recognizes an action "notwithstanding the absence of confusion." <u>Wedgwood Homes v. Lund</u>, 294 Or. 493, 500 (1982). Under this statute, dilution may arise from injury to value of mark caused by use which detracts from reputation associated with plaintiff's mark, or any diminution of the mark resulting from defendant's use of a similar mark. <u>Id.</u>; Or. Rev. Stat. § 647.107. However, there is no evidence to support Safari's assertion that Fuel's use of a flame logo similar to that of Safari has caused diminution of Safari's mark as an advertising tool.

I deny both motions for summary judgment on Safari's counterclaim under the Oregon Anti-Dilution Statute because material issues of fact exist.

As noted, Safari has conceded Fuel's motion for summary judgment on its common law intentional interference with business relations claim, and this motion is therefore granted.

### Conclusion

The cross motions for summary judgment (doc. ## 60, 67) are DENIED in part and GRANTED in part, as follows:

Fuel's motion for summary judgment on its first, second,

14 - OPINION AND ORDER

third and fifth claims for relief is DENIED.

Safari's motion for summary judgment on Fuel's first, second, third and fifth claims for relief is DENIED.

Safari's motion for summary judgment on Fuel's fourth claim for relief is GRANTED.

Fuel's motion for summary judgment on Safari's counterclaim under the Oregon Anti-Dilution statute is DENIED.

Safari's motion for summary judgment on Safari's counterclaim under the Oregon Anti-Dilution statute is DENIED.

Fuel's motion for summary judgment on Safari's counterclaim for intentional interference with business relations is GRANTED.

Safari's motions to strike (doc. ## 83, 91) have been GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 18th day of December, 2006.

/s/  Dennis J. Hubel
Dennis James Hubel
United States Magistrate Judge